# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CELTNIEKS, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant ELIAS J. DUARTE**
**United States Army, Appellant**

ARMY 20140843

Headquarters, 8th Theater Sustainment Command
Jeffery D. Lippert, Military Judge (arraignment)
Gregory A. Gross, Military Judge (motion hearing & trial)
Colonel Paul T. Salussolia, Staff Judge Advocate (pretrial)
Colonel Anthony T. Febbo, Staff Judge Advocate (post-trial)

For Appellant: Captain Katherine L. DePaul, JA; James S. Trieschmann, Jr., Esquire (on brief and reply brief).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Melissa Dasgupta Smith, JA; Captain Christopher A. Clausen, JA (on brief).

30 January 2017

---------------------------------
SUMMARY DISPOSITION
---------------------------------

Per Curiam:

A panel of officers and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [hereinafter UCMJ]. The panel sentenced appellant to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved four years confinement and the remainder of the sentence as adjudged.

This case is before us for review pursuant to Article 66, UCMJ. Appellant asserts six assignments of error and personally raises matters pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982). Our consideration of one of

appellant's assignments of error renders the remainder of appellant's assignments of error and *Grostefon* matters moot.

## BACKGROUND

Appellant stands convicted of twice sexually assaulting Mrs. AM at her home on Schofield Barracks, Hawaii. On 4 January 2014, Mrs. AM was celebrating her birthday with her husband, Sergeant (SGT) FM, and two other families, to include appellant and his wife. Mrs. AM had been drinking alcoholic beverages from before noon through the late night hours of her birthday. Late in the evening, Mrs. AM vomited after she was helped to the bathroom by Mrs. RM, one of her female guests. After cleaning up the kitchen and showing Mrs. RM how to prepare a bottle for her infant daughter, Mrs. AM was taken to her bedroom by Mrs. RM, where she lay on her bed in her black jeggings and long blue shirt. Mrs. RM left Mrs. AM in her bedroom after covering her up with a blanket. Mrs. AM fell asleep. Sergeant FM had been drinking heavily during the course of the day and he fell asleep on the living room sofa. Mrs. RM's husband tried to wake up SGT FM to say goodbye by slapping him in the face but was unable to awaken him. Mrs. RM and her husband then left, leaving appellant and his wife (who had gone to sleep earlier in another bedroom) alone with Mrs. AM and her family.

Mrs. AM testified that she felt someone pull the covers off of her and crawl into the bed with her. She thought it was her husband. Mrs. AM testified that she felt a kiss on her left shoulder and a hand moving up her left leg to her torso. She then felt her pants and underwear being pulled down to about mid-thigh, followed by fingers penetrating her vagina. Mrs. AM then reached back and felt a leg that did not feel like her husband's leg. When Mrs. AM looked back, she saw appellant. Mrs. AM then ran into the living room with her pants down, where she unsuccessfully attempted to awaken her husband on the couch. Appellant followed Mrs. AM into the living room, pushed her onto the couch, and inserted his fingers into her vagina again. Mrs. AM was then able to awaken her husband, and appellant retreated to another part of the house. Sergeant FM did not witness the physical contact between appellant and Mrs. AM.

At trial, Ms. JA testified as an expert in forensic biology. Ms. JA stated that swabs from appellant's left hand contained DNA consistent with Mrs. AM's DNA profile, and the large amount of DNA present "is more than likely or a possibility of being from a biological fluid. But in that case touch DNA is also a possibility, but only if heavy touch had occurred." Ms. JA then testified, "If I was to shake somebody's hand there is a possibility that my DNA could have transferred to that person's hand, taking a swabbing and you could get my DNA." The defense did not put on any evidence and appellant did not testify.

At the close of evidence on findings, the military judge noted that the government gave notice under Military Rule of Evidence [hereinafter Mil. R.

DUARTE–ARMY 20140843

Evid.] 413(b), and the defense counsel objected to the use of charged sexual misconduct in this case as evidence of appellant's propensity to commit the two specifications of sexual assault alleged in The Charge. The defense counsel stated:

> Use of [Rule] 413 within the four corners of this charge sheet to allow for one charged sexual assault to serve as a form of proof for another charged sexual assault prevents -- presents a constitutional -- essentially a quagmire that the drafters of the Military Rules of Evidence probably never envisioned and has the potential to improperly erode the accused's presumption of innocence, sir. So, we ask that you do not give the [Rule] 413 instruction.

The military judge noted the defense objection, but ruled in favor of giving the Mil. R. Evid. 413 instruction to the panel by stating, "I am sticking with the *Benchbook* . . . ." *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 7-13-1 nn.3, 4 (1 Jan. 2010).

## LAW AND DISCUSSION

Appellant argues our superior court's holding in *United States v. Hills,* 75 M.J. 350 (C.A.A.F. 2016), is controlling in this case and warrants a reversal of the military judge's findings of guilty and sentence. We agree.

We review a military judge's decision to admit evidence under Mil. R. Evid. 413 for an abuse of discretion. *United States v. Solomon,* 72 M.J. 176, 179 (C.A.A.F. 2013). "Whether a panel was properly instructed is a question of law reviewed de novo." *United States v. Ober,* 66 M.J. 393, 405 (C.A.A.F. 2008) (citation omitted). Where an instructional error rises to a constitutional dimension, we review the error to determine if it was harmless beyond a reasonable doubt. *United States v. Kreutzer,* 61 M.J. 293, 298 (C.A.A.F. 2005). "The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is 'whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence.'" *Id.* (quoting *United States v. Kaiser*, 58 M.J. 146, 149 (C.A.A.F. 2003).

Here, the propensity instruction, while modeled on the Benchbook*,* was, in hindsight, improper in light of our superior court's decision in *Hills.* There, the court noted the use of charged misconduct as propensity evidence to prove other charged misconduct pursuant to Mil. R. Evid. 413 was improper. *Hills*, 75 M.J. at 356 ("It is antithetical to the presumption of innocence to suggest that conduct of which an accused is presumed innocent may be used to show a propensity to have committed other conduct of which he is presumed innocent.").

3

We find the military judge's instruction created an error rising to a constitutional dimension. In *Hills,* our superior court found it error for the military judge, in a member's trial with a factual scenario quite similar to the one at hand, to admit charged offenses as Mil. R. Evid. 413 evidence to show an appellant's propensity to commit the charged offenses. *Hills,* 75 M.J. at 357-58.

*Hills* involved two offenses against a single victim that occurred over the span of two hours on one night. The case relied heavily on the testimony of the victim who, at the time of assault, was heavily intoxicated and in and out of consciousness. The DNA evidence in the case also proved inconclusive. We have considered our superior court's decision in *Hills* and find the present case extremely difficult to distinguish. Appellant twice sexually assaulted Mrs. AM over the span of a few minutes on the same night. This is closely aligned with the "very same charged conduct" present in *Hills. See* 75 M.J. at 354. Additionally, Mrs. AM was intoxicated during the encounter with appellant and was the sole eyewitness against him. The DNA evidence in this case, while helpful to the government, was subject to interpretation and left room for the possibility that touch DNA could have accounted for the forensic conclusions. As in *Hills,* "[w]e cannot know whether the instructions may have tipped the balance in the members' ultimate determination." 75 M.J. at 358. As a result, we are not convinced beyond a reasonable doubt that the propensity instruction did not contribute to the findings of guilty or appellant's sentence. The instructional error was not harmless beyond a reasonable doubt.

## CONCLUSION

The findings of guilty and the sentence are set aside. A rehearing is authorized. All rights, privileges, and property, of which appellant has been deprived by virtue of the findings and sentence hereby set aside by this decision, are ordered restored. *See* UCMJ arts. 58a(b), 58b(c), 75(a).

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court