# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38875 (reh)**

————————————

### UNITED STATES
*Appellee*

**v.**

### Corey J. CAMPBELL
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 10 February 2021

————————————

*Military Judge:* Rebecca E. Schmidt (arraignment); Jennifer E. Powell.

*Approved sentence:* Dishonorable discharge, confinement for 4 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 9 March 2019 by GCM convened at Wright-Patterson Air Force Base, Ohio.

*For Appellant:* Major Benjamin H. DeYoung, USAF; Robert Feldmeier, Esquire.

*For Appellee:* Major Jessica L. Delaney, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, MINK, and LEWIS, *Appellate Military Judges*.

Chief Judge J. JOHNSON delivered the opinion of the court, in which Senior Judge MINK and Senior Judge LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

J. JOHNSON, Chief Judge:

Appellant's case is before this court for the fourth time. At Appellant's original trial in May 2015, a general court-martial composed of a military judge alone convicted Appellant, contrary to his pleas, of one specification of sexual assault in violation of Article 120(b)(1)(B), Uniform Code of Military Justice

(UCMJ), 10 U.S.C. § 920(b)(1)(B); two specifications of abusive sexual contact in violation of Article 120(d), UCMJ, 10 U.S.C. § 920(d); one specification of adultery in violation of Article 134, UCMJ, 10 U.S.C. § 934; and one specification of wrongfully providing alcohol to a minor, also in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 55 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority deferred the reduction in grade and the adjudged and mandatory forfeitures until action, at which time he disapproved the adjudged forfeitures and waived mandatory forfeitures for the benefit of Appellant's spouse and dependent children, but otherwise he approved the sentence.

In Appellant's initial appeal to this court, we affirmed the findings and sentence. *United States v. Campbell*, No. ACM 38875, 2017 CCA LEXIS 153 (A.F. Ct. Crim. App. 28 Feb. 2017), *rev'd*, 76 M.J. 440 (C.A.A.F. 2017) (unpub. op.). The United States Court of Appeals for the Armed Forces (CAAF) granted review, set aside our decision, and remanded the case to this court for further consideration in light of *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017). *United States v. Campbell*, 76 M.J. 440 (C.A.A.F. 2017) (mem.).

On remand, this court again affirmed the findings and sentence. *United States v. Campbell*, No. ACM 38875, 2017 CCA LEXIS 754 (13 Dec. 2017), *rev'd*, 77 M.J. 366 (C.A.A.F. 2018) (unpub. op.). The CAAF again granted review; on 18 April 2018 it set aside the findings of guilty with respect to the specification of sexual assault and the two specifications of abusive sexual contact, affirmed the convictions for adultery and wrongfully providing alcohol to a minor, and set aside the sentence. *United States v. Campbell*, 77 M.J. 366 (C.A.A.F. 2018) (mem.). The CAAF returned the record to The Judge Advocate General for remand to this court and stated this court "may order a rehearing" as to the set-aside findings of guilty and the sentence. *Id.*

The record was returned to this court on 1 May 2018. On 12 July 2018, this court issued an order returning the record to The Judge Advocate General for remand to the convening authority and authorized a rehearing as to the specifications of sexual assault and abusive sexual contact and the sentence.

The record was delivered to the convening authority on 18 July 2018. On 20 September 2018, the convening authority referred the sexual assault and

---

[1] Unless otherwise indicated, all references to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2012 ed.), and all other references to the UCMJ and to Rules for Courts-Martial and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

abusive sexual contact specifications to a general court-martial "for a rehearing and a rehearing on the sentence."[2] Appellant was arraigned on 5 November 2018 and tried by a general court-martial composed of officer and enlisted members on 4–9 March 2019. The court-martial found Appellant not guilty of the two specifications of abusive sexual contact but guilty of the specification of sexual assault. The court-martial sentenced Appellant to a dishonorable discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority disapproved the adjudged forfeitures and approved the remaining elements of the sentence.

Before this court once more, Appellant raises seven issues on appeal: (1) whether the military judge erred in the amount of credit she awarded Appellant for unlawful pretrial punishment; (2) whether a defective referral deprived this court of jurisdiction because the convening did not set aside the sentence before ordering a rehearing; (3) whether the evidence is factually insufficient to sustain his conviction for sexual assault; (4) whether the military judge erred in failing to sever the charges; (5) whether the approved sentence in this case violates Article 63, UCMJ, 10 U.S.C. § 863;[3] (6) whether the military judge erred in instructing the court members as to incapacity to consent, an uncharged theory of liability; and (7) whether the military judge erred when

---

[2] The convening authority did not explicitly refer the previously affirmed specifications of adultery and wrongfully providing alcohol to a minor. At the subsequent trial, the military judge ruled that these specifications had not been referred and were not before the court-martial for purposes of determining a sentence. The convening authority's General Court-Martial Order No. 5, dated 23 July 2019, states that a rehearing on these two charges and specifications "was found to be impracticable and a sentence of no punishment was ordered for those charges and specifications in General Court Martial Order No. 1, this headquarters, dated 1 May 19." General Court Martial Order No. 1 is not included with the record of trial for the court-martial under review. As Appellant has asserted neither error nor prejudice arising from the 1 May 2019 order, and we perceive no prejudice to Appellant, we do not address it further in our review of the findings and sentence adjudged at the rehearing.

[3] Article 63, UCMJ, 10 U.S.C. § 863, provides in pertinent part:

> Upon a rehearing . . . no sentence in excess of or more severe than the original sentence may be approved, unless the sentence is based upon a finding of guilty of an offense not considered upon the merits in the original proceedings, or . . . the sentence prescribed for the offense is mandatory.

she refused to admit opinion evidence that the victim was attracted to Appellant.[4] In addition, although not raised by Appellant, we consider whether he is entitled to relief for facially unreasonable post-trial delay. We have carefully considered issues (2), (5), and (7), and we find they warrant neither further discussion nor relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). As to the remaining issues, we find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

In the summer of 2014, Appellant was an Air Force recruiter assigned to a squadron in Cincinnati, Ohio. He lived with his wife at the time[5] and their two young children. Appellant's wife was originally from the Cincinnati area, and her younger sister MH lived in a nearby town. Appellant and his sister-in-law MH had known each other since MH was in the fourth grade. However, as MH became older she perceived that Appellant would act "creepy" toward her when he drank alcohol, so she and her friends began to avoid him on those occasions.

One night in the summer of 2014, Appellant went to a bar in Cincinnati as part of a group that included his wife, his wife's sister MH, and MH's friend AM, among others. AM was 15 or 16 years old at the time; MH was 16 or 17 years old. According to AM's testimony at Appellant's trial, Appellant and his wife provided five or six alcoholic drinks to AM that night and she became "very intoxicated." According to AM, on multiple occasions that night Appellant approached AM, made flirtatious comments to her, and touched her upper thigh. When the group was leaving the bar for the night, Appellant was walking behind AM when he grabbed her buttocks with his hand. AM ran forward and told MH that Appellant had "grabbed [her] butt," to which MH responded "tell him to stop." AM further testified that when the group got into Appellant's van to depart, Appellant was seated in the second row. When AM entered the van to climb past him to get to an empty seat in the back row, Appellant pulled AM onto his lap and rubbed her thighs over her dress. MH observed Appellant pull AM onto his lap. According to AM, she did not consent to any of this physical contact by Appellant, but she did not initially report his behavior to anyone other than MH. The rehearing court-martial found Appellant not guilty of two specifications of committing abusive sexual contact on AM.

---

[4] Appellant personally asserts issue (7) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[5] Appellant and his wife divorced prior to Appellant's rehearing.

On 24 October 2014, Appellant, his wife, his wife's sister MH, and MH's friend KC attended a costume party at the home of one of Appellant's friends.[6] MH and KC were both 17 years old at the time. MH and KC spent most of the evening together. Appellant provided MH with alcohol during the party, and she became intoxicated. According to MH's testimony at the rehearing, eventually KC laid down on a bed in a spare bedroom to sleep. MH's sister (Appellant's wife) told MH she should also go to sleep, so MH went into the bedroom to sleep next to KC. MH testified Appellant went into the room with her, spoke with her, and put his hand on her thigh while she took off her shoes. MH pushed Appellant's hand away, after which Appellant turned off the light and closed the door. MH fell asleep next to KC.

MH testified that when she awoke, she found she was on her back and Appellant was on top of her. Appellant had pushed up her skirt and was thrusting back and forth with his penis penetrating her vagina. MH initially "thought it was a nightmare," and moved her head from side to side in an attempt to "wake" herself. At one point Appellant tried to kiss MH as he continued thrusting, and MH again shook her head. When Appellant finished and got up, MH curled into a ball on the bed and began crying. MH testified that KC then got up and began "screaming" at Appellant that he had "just raped" MH. Appellant argued with KC, claiming that MH had been awake. It seemed to MH that KC shoved Appellant out of the room and closed the door.

KC also testified at Appellant's rehearing trial. She estimated that she and MH spent three or four hours at the party drinking alcohol and playing party games. KC observed that MH became intoxicated to the point that "she could hardly stand." Eventually, KC "felt like [she] had enough," and she went to lay down in the spare bedroom. She woke up when MH and Appellant entered the room; Appellant was trying to get MH to go to sleep, although MH did not want to. Eventually MH lay down next to KC. KC testified that the lights were out, but Appellant did not leave. KC was lying on the bed facing away from MH, so she could not see what was happening. However, she could feel the bed move, and she could hear Appellant's voice calling MH by her nickname, asking MH "is this okay" and "if she liked it," and saying "You are wild, [M]."[7] MH did not respond, but was "whimpering." KC did not move or say anything during the assault because she was "in shock" and "really scared." However, when Appellant got up and put his pants back on, KC "jumped" from the bed, began screaming at Appellant that he had "raped" MH, and pushed Appellant out of the room. MH was crying on the bed. After KC pushed Appellant from the

---

[6] KC subsequently married and changed her last name. We refer to her by her initials at the time of the offense.

[7] Appellant addressed MH by her nickname.

room, Appellant began knocking on the door and asking "what happened?" At some point Appellant left, and KC found the owner of the house and told him what had occurred.

Other witnesses provided conflicting testimony regarding Appellant's behavior immediately after the sexual assault. ST, a friend of Appellant's, testified that he was in a bathroom when he heard Appellant knocking on the bedroom door, asking in a "very calm" tone, "is everything okay?" and "can you let me in?" In contrast, BS saw Appellant come out of the bedroom where MH had been sleeping, and then Appellant "started pounding on the door to be let back in." BS testified Appellant seemed "pretty frantic" and was "screaming, 'quit it, [M], I did not touch you.'" However, there was general agreement among these two witnesses and others that Appellant drove away in the family van shortly thereafter, leaving his wife, MH, and KC behind.

MH was taken to a hospital where she underwent a sexual assault forensic exam. Her pelvic exam indicated redness and swelling on her cervix and a "clear white fluid" in her vagina. Subsequent forensic analysis indicated the presence of semen and a DNA profile consistent with Appellant's. Relying on forensic testing and reverse extrapolation of a blood sample taken from MH at the hospital, at Appellant's trial a forensic toxicologist estimated that MH's blood alcohol content around the time of the sexual assault was between 0.111 and 0.156 "grams percent."[8]

The rehearing court-martial found Appellant guilty of sexually assaulting MH by causing bodily harm, specifically penetrating her vulva with his penis without her consent.

## II. DISCUSSION

### A. Unlawful Pretrial Punishment Credit

#### 1. Additional Background

On 9 November 2018, the Defense submitted a motion to dismiss the pending charges because Appellant "has been unlawfully subject to conditions of parole constituting both restriction and unlawful pretrial punishment pursuant to Rule for Courts-Martial (R.C.M.) 707 or Article 13, UCMJ, [10 U.S.C. § 813,] and for a period of time excessive under *United States v. Moreno*, [63 M.J. 129, 142 (C.A.A.F. 2006),] and other case law." At the time the CAAF set aside Appellant's Article 120, UCMJ, convictions on 18 April 2018, Appellant had

---

[8] We understand "grams percent" to be a reference to the measurement of grams of alcohol per 100 milliliters of blood.

been released from confinement but was on supervised release (parole) pursuant to the 55-month term of confinement imposed on 21 May 2015 at his original court-martial. The defense motion explained that the terms of Appellant's parole imposed substantial restrictions on his liberty and other interests, including *inter alia* mandatory polygraph examinations and non-confidential sex offender treatment. Appellant had not been released from his parole as of the filing of the Defense's motion on 9 November 2018. The Defense contended Appellant was entitled to relief under Article 13, UCMJ, because his continued parole after the CAAF set aside his Article 120, UCMJ, convictions and sentence constituted unlawful pretrial punishment; that pursuant to R.C.M. 707 the military judge should dismiss the charges because Appellant had been subjected to pretrial restriction for more than 120 days; and that pursuant to *Moreno* the delay in returning the record from this court to the convening authority following the CAAF's remand was excessive. The Government opposed the motion, and in particular contended that dismissal of the charges was not warranted.

On 28 November 2018, the military judge conducted a hearing on the motion and received argument from counsel. On 30 November 2018, the convening authority ordered Appellant's release from confinement and parole pending his rehearing.

When the court-martial reconvened on 4 March 2019, the military judge explained that she denied the motion to dismiss. However, she deferred ruling on the Defense's alternative request for other appropriate relief until sentencing, if any.

After the court-martial found Appellant guilty of sexual assault, the military judge readdressed the Defense's motion. In an oral ruling that she subsequently supplemented in writing, the military judge found no violation of R.C.M. 707 or of due process under *Moreno*. However, she found the Government's inaction in removing Appellant's parole status from the time this court returned the record to The Judge Advocate General on 12 July 2018 until 30 November 2018 was "arbitrary" and raised an inference of punishment that necessitated relief under Article 13, UCMJ. Accordingly, she ordered that Appellant be granted "one day credit for each day [he] was under parole supervision" from 12 July 2018 until the convening authority released Appellant on 30 November 2018, a total of 141 days.

**2. Law**

"[W]hether [an] appellant is entitled to credit for a violation of Article 13[, UCMJ,] is a mixed question of fact and law." *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002) (citations omitted). We defer to a military judge's findings of fact unless they are clearly erroneous, whereas we consider de novo

whether the facts entitle the appellant to additional credit against his sentence. *United States v. Williams*, 68 M.J. 252, 256 (C.A.A.F. 2010) (citations omitted). "The burden is on [the] appellant to establish entitlement to additional sentence credit because of a violation of Article 13[, UCMJ]." *Mosby*, 56 M.J. at 310 (citing R.C.M. 905(c)(2)).

"Article 13, UCMJ, prohibits two things: (1) the imposition of punishment prior to trial, and (2) conditions of arrest or pretrial confinement that are more rigorous than necessary to ensure the accused's presence for trial." *United States v. King*, 61 M.J. 225, 227 (C.A.A.F. 2005).

Article 67(e), UCMJ, 10 U.S.C. § 867(e), provides in part:

> After [the CAAF] has acted on a case, [it] may direct the Judge Advocate General to return the record to the Court of Criminal Appeals for further review in accordance with the decision of the court. Otherwise, unless there is to be further action by the President or the Secretary concerned, the Judge Advocate General shall instruct the convening authority to take action in accordance with that decision. . . .

A decision of a Court of Criminal Appeals ceases to be inchoate when the record is returned to the convening authority. *See United States v. Rodriguez*, No. ACM 38519 (reh), 2019 CCA LEXIS 35, at *16–17 (A.F. Ct. Crim. App. 30 Jan. 2019) (unpub. op.); *United States v. Mancini*, No. ACM 38783 (reh), 2018 CCA LEXIS 495, at *10 (A.F. Ct. Crim. App. 16 Oct. 2018) (unpub. op.).

### 3. Analysis

Appellant contends the military judge erred by excluding the period from 18 May 2018 (the date upon which he asserts the CAAF's decision setting aside his Article 120, UCMJ, convictions and sentence became final)[9] until 12 July 2018 (when this court returned the record to The Judge Advocate General for remand to the convening authority) from her award of day-for-day confinement credit for illegal pretrial punishment in violation of Article 13, UCMJ. Appellant cites *United States v. Miller*, 47 M.J. 352, 361–62 (C.A.A.F. 1997), for the proposition that the Courts of Criminal Appeals and command authorities are

---

[9] Appellant appears to base his reference to 18 May 2018 on an assumption that the period for the parties to request reconsideration of the CAAF's 18 April 2018 decision was 30 days. The Government does not challenge the accuracy of this assertion. As noted in the procedural history above, the record was returned to this court from the CAAF on 1 May 2018. We do not resolve the accuracy of Appellant's assertion regarding the finality of the CAAF's decision as it is unnecessary to our resolution of the issue.

required to effect the "immediate cessation of punishment" after a CAAF mandate sets aside a sentence. We find no error.

Appellant's reliance on *Miller* is misplaced. Among other significant differences with Appellant's case, *Miller* did not address a situation in which the CAAF remanded the record to a Court of Criminal Appeals for further action by the lower court. In fact, it did not address the effect of a CAAF opinion at all, other than to note that the CAAF's opinions, like those of the Courts of Criminal Appeals, are not "self-executing," and that the appellate courts "depend[ ] on the Judge Advocate General and lower officials to execute [their] orders." *Id.* at 361 (citations omitted).

Appellant's argument suggests that after the CAAF directed that the case be returned to this court, our role was purely ministerial. It was not. Once the CAAF decided to set aside the Article 120, UCMJ, findings and the sentence, in the absence of a request for reconsideration or further action by the President or Secretary, Article 67(e), UCMJ, provided the CAAF two options as to how to proceed. The CAAF might have elected to return the record to The Judge Advocate General to instruct "the convening authority to take action in accordance with [its] decision." 10 U.S.C. § 867(e). The CAAF elected not to do this. Instead, it directed The Judge Advocate General to remand the record to this court for further review in accordance with the CAAF's decision, and further directed this court "*may* order a rehearing" on the set-aside findings and the sentence. *Campbell*, 77 M.J. at 366 (emphasis added); *see* 10 U.S.C. § 867(e). Of course, in conducting our review, this court was bound by the CAAF's decision; but both the text of Article 67(e), UCMJ, and the CAAF's opinion indicate this court was to review the case once more and exercise discretion in how to proceed. In short, the matter was still under appellate review and had not been returned to the convening authority for action. We conclude the military judge did not err in finding Appellant was not entitled to relief under Article 13, UCMJ, prior to this court's 12 July 2018 order returning the record to The Judge Advocate General for remand to the convening authority.

Appellant argues in the alternative that he is entitled to additional Article 13, UCMJ, credit due to unreasonable "nearly 100-day" appellate delay in returning the record to the convening authority following the CAAF's 18 April 2018 decision. Appellant's argument is without merit. As described above, the CAAF returned the record to this court for further substantive review in accordance with its decision. The record was returned to The Judge Advocate General and received by this court on 1 May 2018. According to the Joint Courts of Criminal Appeals Rules of Practice and Procedure in effect at the time, "Any brief for an accused shall be filed within 60 days after appellate counsel has been notified of the receipt of the record in the Office of the Judge Advocate General." JT. CT. CRIM. APP. R. 15(b) (2017). Accordingly, the time for

any supplemental filings by Appellant did not expire until 30 June 2018. *Cf. United States v. Muller*, 79 M.J. 359, 361 (C.A.A.F. 2020) (per curiam) (holding Court of Criminal Appeals rule that contradicted Joint Courts of Criminal Appeals Rule 15(b) was invalid). After no brief was submitted by Appellant, this court completed its review and issued its order authorizing a rehearing and returning the record to the convening authority within two weeks thereafter. We find no inappropriate appellate delay that warrants relief.

## B. Factual Sufficiency

### 1. Law

We review issues of factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). The evidence need not be "free from conflict" in order to be convincing beyond a reasonable doubt. *Id.* (quoting *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)).

In order to convict Appellant of the charged sexual assault in violation of Article 120, UCMJ, the Government was required to prove beyond a reasonable doubt: (1) that within the state of Ohio, between on or about 24 October 2014 and on or about 25 October 2014, Appellant committed a sexual act upon MH by penetrating her vulva with his penis; and (2) that Appellant did so by causing bodily harm, to wit: penetrating MH's vulva with his penis without her consent. *See Manual for Courts-Martial, United States* (2012 ed.) (*MCM*), pt. IV, ¶ 45.a.(b)(1)(B), (g)(1), (g)(3).

The defense of mistake of fact as to consent would apply if Appellant, because of ignorance or mistake, incorrectly believed that MH consented to the sexual act. *See* R.C.M. 916(j)(1). In order to rely on a mistake of fact as to a consent defense, Appellant's belief must have been reasonable under all the circumstances. *See id.*; *see generally United States v. Jones*, 49 M.J. 85, 91

(C.A.A.F. 1998) (citation omitted). Once raised, the Government bears the burden to prove beyond a reasonable doubt that the defense does not exist. R.C.M. 916(b)(1); *see United States v. McDonald*, 78 M.J. 376, 379 (C.A.A.F. 2019).

### 2. Analysis

The Government introduced convincing evidence of Appellant's guilt. The testimony of MH established that she was sleeping next to her friend KC when Appellant pushed up her skirt and penetrated her vulva with his penis. At no point did she consent. Instead, MH was initially confused and turned her head from side to side in an effort to "wake up." When Appellant attempted to kiss her, she again shook her head. As soon as Appellant finished, MH curled into a ball and began to cry.

KC's testimony substantially corroborated MH's testimony. She heard Appellant come into the bedroom with MH. She heard his voice and felt the bed shake as he sexually assaulted MH. Although Appellant seemed to be speaking to MH during the assault, MH never responded but only "whimpered." When Appellant got off of MH, MH began to cry.

Forensic evidence also powerfully corroborated MH's testimony. Appellant's sperm was found in MH's vagina. The sexual assault nurse examiner found redness and swelling on MH's cervix. Blood alcohol testing confirmed that MH was significantly intoxicated at the time of the assault, consistent with the testimony of KC and MH herself, which may have contributed to MH's confused reaction when she awoke.

In addition, we find the testimony regarding Appellant's behavior immediately after the assault probative. KC testified that after she pushed him out of the room, he began knocking on the door and asking "what happened," as if he had not been present for whatever had occurred inside the room. Similarly, BS saw Appellant exit the bedroom and then begin pounding on the door to be let in. BS also heard Appellant "scream" that he "did not touch" MH. ST's testimony that Appellant was speaking in a "calm" voice asking "is everything okay" was superficially more favorable to Appellant. However, we find his testimony less reliable because of his long association with Appellant, the fact that he did not observe Appellant exit the bedroom or directly observe him outside the door, and in light of the other evidence of the surrounding circumstances. Moreover, all of the witnesses including ST agreed Appellant drove away in the van shortly thereafter, leaving behind Appellant's wife as well as MH and KC; the owner of the house described hearing the van's "tires peeling out and burning down the street." We find Appellant's dissembling behavior and abrupt departure suggestive of his consciousness of guilt.

On appeal, Appellant contends that his sexual encounter with MH, "while distasteful," was consensual. We are not persuaded. Appellant emphasizes

KC's testimony that he spoke to MH during the sexual act, but there is no evidence MH affirmatively responded to Appellant or consented in any way. Appellant suggests KC would have intervened sooner if she truly believed MH was being sexually assaulted, but we find KC's explanation credible—that she initially lay still because she was shocked and afraid. Appellant asserts purported discrepancies in the testimony among witnesses at the rehearing, and also asserts discrepancies in the testimony of the same witness at the original trial and the rehearing, but we find his specific claims largely unconvincing as well as peripheral to the essential issues. Similarly, we find Appellant's claims that MH had a strong motive to falsely claim sexual assault rather than admit she had betrayed her sister, and that MH suspiciously deleted Facebook messages about the sexual assault, to be simply unpersuasive in light of the evidence adduced by the Government.

Accordingly, having weighed the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

## C. Severance

### 1. Additional Background

After arraignment but before Appellant's trial, the Defense moved to sever the sexual assault charge and specification from the abusive sexual contact charge and specifications. The Government opposed the motion.

After conducting a hearing and receiving argument from counsel, the military judge denied the motion to sever. In a written ruling she analyzed the three factors identified in *United States v. Curtis*, 44 M.J. 106, 128 (C.A.A.F. 1996), *rev'd as to sentence on recon*, 46 M.J. 129 (C.A.A.F. 1997), as articulated in *United States v. Southworth*, 50 M.J. 74, 76 (C.A.A.F. 1999): "(1) whether the evidence of one offense would be admissible proof of the other; (2) whether the military judge has provided a proper limiting instruction; and (3) whether the findings reflect an impermissible crossover." The military judge found that although the Government conceded the first factor favored severance, the remaining factors weighed against it. Accordingly, she found the Defense had not met its burden to demonstrate severance was necessary to avoid a "manifest injustice." R.C.M. 906(b)(10). However, the military judge further stated "[a]s part of this ruling, the Government is additionally directed to frame its opening statement, closing argument and witness examinations so as to maintain [the] separation" between the sexual assault specification and abusive sexual contact specifications.

When instructing the court members with respect to findings, the military judge advised, *inter alia*:

An accused may be convicted based only on the evidence before the Court and not evidence of a general criminal disposition. Each offense must stand on its own and you must keep the evidence of each offense separate. Stated differently, if you find or believe that the accused is guilty of one offense, you may not use the finding or belief as a basis for inferring, assuming, or proving that he committed any other offense.

If evidence has been presented which is relevant to more than one offense, you may consider that evidence with respect to each offense to which it is relevant. For example, if a person were charged with stealing a knife and later using that knife to commit another offense, evidence concerning the knife, such as that the person being in possession of it, or that person's fingerprints being found on it, could be considered with regards to both offenses. But the fact that the person's guilt of stealing the knife may have been proven, is not evidence that the person is also guilty of any other offense.

The burden is on the prosecution to prove each and every element of each offense beyond a reasonable doubt. Proof of one offense carries with it no inference that the accused is guilty of any other offense.

**2. Law**

We review a military judge's ruling on a motion to sever for an abuse of discretion. *United States v. Giles*, 59 M.J. 374, 378 (C.A.A.F. 2004) (citation omitted). "A military judge abuses [her] discretion when [her] findings of fact are clearly erroneous, when [she] is incorrect about the applicable law, or when [she] improperly applies the law." *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004).

"Under R.C.M. 906(b)(10), a military judge is required to grant a severance motion when necessary to avoid a 'manifest injustice.'" *Giles*, 59 M.J. at 378. On appeal, "the appellant must demonstrate more than the fact that separate trials would have provided a better opportunity for an acquittal;" he must demonstrate "the ruling caused actual prejudice by preventing the appellant from receiving a fair trial." *Id.* (citations omitted). Appellate courts review such rulings by applying the same factors employed by the military judge: "(1) Do the findings reveal an impermissible crossover of evidence? (2) Would the evidence of one offense be admissible proof of the other? (3) Did the military judge provide a proper limiting instruction?" *Id.* (citing *Curtis*, 44 M.J. at 128).

Court members are presumed to follow the military judge's instructions in the absence of evidence to the contrary. *See United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000) (citations omitted).

**3. Analysis**

The military judge did not abuse her discretion in concluding severance was not required in order to prevent manifest injustice to Appellant. Accepting that the evidence Appellant committed abusive sexual contact on AM in June or July 2014 was not admissible to prove Appellant sexually assaulted MH in October 2014, and vice versa, *see generally United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), the military judge nevertheless reasonably anticipated that she would give appropriate limiting instructions and found the Defense had not demonstrated a substantial risk of impermissible crossover of the evidence. The military judge did give appropriate limiting instructions, and the Government generally adhered to her direction to present its opening, evidence, and argument in a manner that kept the charged offenses distinct. Reviewing the record as a whole, we find no indication the court members failed to follow the military judge's instruction or impermissibly relied on evidence of the alleged abusive sexual contact in order to find Appellant guilty of sexual assault.

Appellant cites the CAAF's opinion in *United States v. Guardado*, 77 M.J. 90, 94 (C.A.A.F. 2017), for the principle that "[c]onfusing instructions create a substantial risk of impermissible crossover which may impermissibly lower the burden of proof where those instructions appear to suggest that a panel may find the accused has a general criminal propensity." However, the confusing instructions the CAAF addressed in *Guardado* are entirely absent here. In contrast to Appellant's original trial, which resulted in the CAAF setting aside his Article 120, UCMJ, convictions for a *Hills* error, the court members at Appellant's rehearing did not receive confusing and erroneous instructions that they could use proof of Appellant's guilt of one charged sexual offense as evidence Appellant was guilty of another charged sexual offense, pursuant to Mil. R. Evid. 413. *See id.* at 92–93; *Campbell*, 77 M.J. at 366; *see also Hills*, 75 M.J. at 353–57. To the contrary, as described above, the military judge provided a clear anti-spillover instruction.

Appellant contends that the spillover instruction in combination with the additional instruction that "evidence which is relevant to more than one offense" may be considered "with respect to each offense to which it is relevant" was confusing. However, he does not challenge the correctness *per se* of either instruction. We find that the provision of these two accurate, standard instructions, which are routinely provided at Air Force courts-martial, did not create an impermissible risk of spillover or any other manifest injustice. Accordingly, we conclude the military judge did not abuse her discretion.

**D. Instruction on Incapacity to Consent**

**1. Additional Background**

The military judge provided the court members the following instructions, *inter alia*, with respect to the charged sexual assault against MH:

> In order to find [Appellant] guilty of this offense you must be convinced by legal and competent evidence beyond a reasonable doubt:
>
> 1) That between on or about 24 October 2014 and on or about 25 October 2014, within the state of Ohio, the accused committed a sexual act upon [MH];
>
> 2) That the accused did so by causing bodily harm to [MH], to wit: penetrating her vulva with his penis; and
>
> 3) That the accused did so without the consent of [MH].
>
> . . .
>
> "Bodily harm" means any offensive touching of another, however slight, including any nonconsensual sexual act.
>
> The government alleged the accused committed a sexual act, to wit: penetrating the vulva of [MH] with his penis, and that the same physical act also constitutes a bodily harm required for the charge[d] sexual assault. Under these circumstances, the government also has the burden to prove beyond a reasonable doubt that [MH] did not consent to the physical act.
>
> "Consent" means a freely given agreement to the conduct at issue by a competent person. An expression or [sic] lack of consent through words or conduct means there is no consent. Lack of verbal or physical resistance or submission resulting from the use of force, threat of force, or placing another person in fear does not constitute consent. . . .
>
> Lack of consent may be inferred based on the circumstances. All the surrounding circumstances are to be considered in determining whether a person gave consent or whether a person did not resist or cease[d] to resist only because of another person's actions.
>
> . . .
>
> Evidence concerning consent to the sexual conduct, if any, is relevant and must be considered in determining whether the gov-

ernment has proven the elements of the offense beyond a reasonable doubt. Stated another way, evidence the victim consented to the sexual conduct, either alone or in conjunction with the other evidence in this case, may cause you to have a reasonable doubt as to whether the government has proven every element of the offense.

Trial defense counsel did not object to these particular instructions.

During deliberations on findings, one of the court members asked the military judge for clarification regarding the terms "freely given agreement" and "competent person." The military judge advised the parties she intended to provide the non-statutory definitions set forth in our sister court's opinion in *United States v. Pease*, 74 M.J. 763, 770 (N.M. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 180 (C.A.A.F. 2016), that the CAAF subsequently indorsed. Trial defense counsel did not object to the proposed instruction, but requested an additional instruction that "there is no blood alcohol content level which is determinative on the law whether someone is competent." When the military judge denied this request, trial defense counsel requested the military judge "instruct the members of what impaired by and intoxicated means." The military judge denied this request as well, commenting "I am just going to keep it simple." The military judge then instructed the court members:

> A competent person is a person who possesses the physical and mental ability to consent. An incompetent person is a person who lacks either the mental or physical ability to consent because he or she is asleep or unconscious, impaired by a drug[,] intoxicant[,] or other similar substance, or suffering from a mental disease or defect or a physical disability. To be able to freely make an agreement, a person must first possess the cognitive ability to appreciate the nature of the conduct in question and then possess the mental and physical ability to make and communicate a decision regarding that conduct to the other person. However, if the person has the ability to appreciate the conduct and communicate lack of consent but does not do so out of fear or some other external influence counteract during [sic] voluntariness the sexual conduct is not voluntary. A person is incapable of consenting when he or she lacks the cognitive ability to appreciate the sexual conduct in question or the physical or mental ability to make or to communicate a decision about whether he or she agrees to the conduct.

The military judge then asked the parties if they had objections to the instruction or requests for additional instructions. Trial defense counsel responded, "None other than have been previously noted." The court members

indicated this instruction answered the question, and requested a written copy. The members asked no further questions about consent or competency before delivering their findings.

**2. Law**

Generally, we review the adequacy of the military judge's instructions de novo. *United States v. Dearing*, 63 M.J. 478, 482 (C.A.A.F. 2006) (citations omitted). However, the CAAF has held that when an appellant affirmatively declines to object to the military judge's instructions, the issue is waived. *United States v. Davis*, 79 M.J. 329, 332 (C.A.A.F. 2020) (citations omitted), *cert. denied*, __ S. Ct. __, 2020 U.S. LEXIS 4468 (5 Oct. 2020). The CAAF will not review waived issues, because affirmative waiver leaves no error to correct on appeal. *Id.* (citation omitted). However, pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c), the Courts of Criminal Appeals have the unique statutory responsibility to affirm only such findings of guilty and so much of the sentence that they find are correct and "should be approved." This includes the authority to address errors raised for the first time on appeal despite waiver of those errors at trial. *See United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018).

As charged in this case, in order for the court members to find Appellant guilty of sexual assault against MH, the Government was required to prove beyond a reasonable doubt that, *inter alia*, Appellant caused the penetration of MH's vulva by Appellant's penis without MH's consent. *See MCM*, pt. IV, ¶ 45.a.(b)(1)(B), (g)(3). "Consent" is defined as "a freely given agreement to the conduct at issue by a competent person." *MCM*, pt. IV, ¶ 45.a.(g)(8)(A). "A sleeping, unconscious, or incompetent person cannot consent." *MCM*, pt. IV, ¶ 45.a.(g)(8)(B). "Lack of consent may be inferred based on the circumstances of the offense. All of the surrounding circumstances are to be considered in determining whether a person gave consent . . . ." *MCM*, pt. IV, ¶ 45.a.(g)(8)(C).

**3. Analysis**

On appeal, Appellant contends "[t]he military judge erred in instructing the panel as to incapacitation when bodily harm was the charged theory." We conclude Appellant cannot prevail on this issue.

To begin with, trial defense counsel affirmatively stated the Defense had no objection to the pertinent portions of the military judge's original instructions on the offense of sexual assault, nor to the *Pease* instruction the military judge provided in response to the court member's question. The limited additional instructions the Defense requested and the military judge denied would not have altered the wording or effect of the *Pease* instruction Appellant now challenges on appeal. Accordingly, in light of *Davis*, we find Appellant has waived the alleged error. *See* 79 M.J. at 331–32.

However, this conclusion does not end our analysis. We recognize our authority under Article 66(c), UCMJ, to pierce an appellant's waiver in order to correct a legal error. *See Hardy*, 77 M.J. at 442–43. Accordingly, we address the substance of Appellant's argument to explain why the asserted error is without merit in any event.

Essentially, Appellant argues that sexual assault by causing bodily harm, to wit, committing a sexual act without consent, and sexual assault by committing a sexual act on a person who is incapable of consenting are "mutually exclusive" theories of liability under Article 120, UCMJ. *See MCM*, pt. IV, ¶ 45.a.(b)(1)(B), (3). Therefore, he reasons, the Government was required to separately charge sexual assault due to incapacity in the alternative to sexual assault by bodily harm. Because the Government did not do so, the military judge's instruction erroneously permitted the court members to find Appellant guilty on the theory that MH was incapable of consenting. *Cf. United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (quoting *Dunn v. United States*, 442 U.S. 100, 106 (1979)) ("To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process.")

However, Appellant's premise is flawed. He cites no decision from the CAAF or any of the Courts of Criminal Appeals holding that the Government cannot convict an accused on a bodily harm theory of sexual assault in violation of Article 120, UCMJ, where the victim was not competent to consent. As charged, the Government was required to prove MH did not consent to the sexual act. The military judge provided the members the standard instruction—derived directly from the statute—that "consent" means a "freely given agreement to the conduct at issue by a competent person." Thus, the question of whether MH was competent to consent was directly and appropriately before the members. When a court member specifically asked the military judge to clarify the meaning of "competent person," she provided the definition set forth in *Pease* that the CAAF has specifically indorsed. This was entirely appropriate. *See Ober*, 66 M.J. at 405 ("The military judge has an independent duty to determine and deliver appropriate instructions.") (citation omitted). The extent to which MH was intoxicated or was asleep at the time Appellant committed the sexual act were part of the "surrounding circumstances" that were "to be considered in determining whether [MH] gave consent," in accordance with Article 120, UCMJ. *MCM*, pt. IV, ¶ 45.a.(g)(8)(C); *see also United States v. Harris*, No. ACM 39640, 2020 CCA LEXIS 299, at *26–27 (A.F. Ct. Crim. App. 2 Sep. 2020) (unpub. op.). Therefore, we find no error that would warrant piercing Appellant's waiver.

**E. Post-Trial Delay**

Appellant's court-martial concluded on 9 March 2019. However, the convening authority did not take action until 23 July 2019. This 136-day period exceeded by 16 days the 120-day threshold for a presumptively unreasonable post-trial delay the CAAF established in *Moreno*, 63 M.J. at 142. Accordingly, although Appellant has not raised the issue in his assignments of error, we have considered the four factors the CAAF identified in *Moreno* to assess whether Appellant's due process right to timely post-trial and appellate review has been violated: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004) (per curiam)). "We review de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *Id.* (citations omitted).

In *Moreno*, the CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. 63 M.J. at 138–39 (citations omitted). In this case, the post-trial delay did not result in oppressive incarceration because Appellant had already completed his term of confinement before the sentence was adjudged. Moreover, there is no oppressive incarceration where the appellant does not prevail on the substantive grounds of his appeal, as Appellant has not prevailed in the instant appeal of his rehearing. *Id.* at 139. Similarly, where Appellant's substantive appeal fails, his ability to present a defense at another rehearing is not impaired, and we cannot perceive how any ground for appeal has been materially impaired. *Id.* at 140. With regard to anxiety and concern, "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* Appellant has made no claim or showing of such particularized post-trial anxiety or concern in this case, distinct from that experienced by other appellants convicted of sexual assault, and we perceive none.

Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Significantly, in this case post-trial defense motions that were not finally denied by the military judge until 3 July 2019 delayed authentication of the record until that date. Thereafter, Appellant's case was processed expeditiously. We conclude that the

breach of the *Moreno* standard in this case was not egregious under the circumstances, and we do not find a violation of Appellant's due process rights.

Recognizing our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude no such relief is warranted.

### III. CONCLUSION

The findings of guilty with respect to Charge II and its Specification (adultery) and Additional Charge II and its Specification (wrongfully proving alcohol to a minor) were previously affirmed. The findings and sentence adjudged by the court-martial and approved by the convening authority are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court