# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, EWING,[1] and JUETTEN
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist PHILLIP E. THOMPSON, JR.**
**United States Army, Appellant**

ARMY 20190525

Headquarters, Fort Stewart
David H. Robertson, Military Judge (trial)
J. Harper Cook, Military Judge (rehearing)
Colonel Michael D. Mierau, Jr., Staff Judge Advocate (trial)
Colonel Joseph M. Fairfield, Staff Judge Advocate (rehearing)

For Appellant: Major Robert W. Rodriguez, JA (argued);[2] Colonel Philip M. Staten, JA; Major Bryan A. Osterhage, JA (on brief); Colonel Philip M. Staten, JA; Major Bryan A. Osterhage, JA; Major Robert W. Rodriguez, JA (on reply brief).

For Appellee: Captain Anthony J. Scarpati, JA (argued); Major Chase C. Cleveland, JA; Colonel Richard E. Gorini, JA; Captain Anthony J. Scarpati, JA (on brief).

30 June 2025

------------------------------------------------------------------
MEMORANDUM OPINION ON FURTHER REVIEW
------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

POND, Chief Judge:

---

[1] Judge EWING took final action in this case while on active duty.

[2] We heard oral argument in this case on 26 September 2024 at University at Buffalo School of Law as a part of "Project Outreach," a public awareness program demonstrating the operation of the military justice system.

In the early afternoon of Sunday, 5 March 2017, Sergeant (SGT) Shaquille Craig murdered two fellow Soldiers, Private Second Class (PV2)███ and Specialist (SPC)███ in an apartment in Hinesville, Georgia. Appellant assisted SGT Craig in gaining access to the apartment and was later convicted, contrary to his pleas, of two specifications of involuntary manslaughter. Appellant raises two issues before this court. First, whether the military judge's special findings warrant reversal of appellant's convictions? Second, whether the government's use of inconsistent theories at appellant's and SGT Craig's courts-martial also warrants reversal? For reasons discussed below, we answer both of these questions in the negative and affirm the findings and sentence.[3]

## BACKGROUND

### A. Procedural History

This is not the first time appellant's case has been before this court on appeal. Appellant was first convicted, pursuant to his pleas, of two specifications of premeditated murder in violation of Article 118, UCMJ, predicated on an aider and abettor theory of liability.[4] *United States v. Thompson*, 81 M.J. 824, 826 (Army Ct. Crim. App. 2021). He was sentenced to a dishonorable discharge and confinement for life without the possibility of parole; the convening authority approved only so much of the sentence as provided for Dishonorable Discharge and 35 years of confinement. During his first appeal, appellant asserted the military judge abused his discretion by accepting appellant's plea to premeditated murder. During the providence inquiry, the military judge failed to advise appellant of the specific intent required, and appellant made statements that he "did not wish harm upon" the victims, "didn't desire for them to be killed," and "hoped nobody would be hurt." *Id.* This court concluded that while the providence inquiry established appellant had the specific intent to assist SGT Craig, appellant's plea was improvident because it failed to establish that appellant possessed the requisite mens rea: the specific intent to unlawfully kill with premeditation. *Id.* at 830 (stating "one cannot both desire the victims not to be killed or hurt while also possessing the specific intent to unlawfully kill the same with premeditation"). Consequently, this court set aside the finding and sentence and authorized a rehearing. *Id.* at 836.

---

[3] We have also given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and determine they merit neither discussion nor relief.

[4] Specifications 1 and 2 of Charge I read as follows: "In that SPC Phillip E. Thompson, U.S. Army, did, at or near Hinesville, GA, on or about 5 March 2017, with premeditation, murder [the victim] by means of shooting him with a handgun."

The government subsequently re-referred the two specifications of premeditated murder to court-martial. But this time, at the rehearing, appellant pleaded not guilty to the charged offenses. A military judge, sitting as a general court-martial, acquitted appellant of the greater offense of premeditated murder but convicted appellant, contrary to his pleas, of two specifications of involuntary manslaughter, in violation of Article 119, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 919, and sentenced him to a Dishonorable Discharge and eight years of confinement.[5] The convening authority approved the sentence and, except for the Dishonorable Discharge, ordered it executed, and credited appellant with 1,004 days of confinement towards the sentence to confinement. Appellant now contends his convictions should be reversed.

## B. The Murders

On 5 March 2017, appellant was attending Sunday church service with his family when he received a phone call from his friend, SGT Shaquille Craig. SGT Craig had seen his estranged wife the night before at a party with another man, PV2 ███. SGT Craig asked appellant to meet him at a parking lot next to a library, just down the street from the apartment to where he had followed PV2 MJ earlier that day. Appellant told his wife he would not be very long and drove to meet SGT Craig with his infant son in the back seat. When appellant arrived at the parking lot, SGT Craig climbed inside appellant's truck and said he had seen his wife "hugged up" with another man. SGT Craig then said "these n[***] got to go" and pulled a Glock handgun from his waistband.

SGT Craig told appellant to drive to the apartment down the street where he had spotted PV2 ███ earlier that day and to "go see if the back door . . . was unlocked, and if it was [appellant] should go in and ask them if [appellant] left a laptop" during a party the night before. Appellant did as SGT Craig requested but discovering the back door was locked, knocked and rang the doorbell. PV2 ███, the first victim, opened the back door slightly and asked appellant to come around to the front door, which he did and was invited inside. PV2 ███, wearing white pants and a blue-flowered shirt, asked appellant if he had been there at the party the night before, whether the party was any good, and whether appellant left anything. Appellant murmured that he had left his laptop. PV2 ███ walked towards the kitchen, texting, then turned to the back of the apartment to speak to SPC ███, who lived there.

---

[5] The military judge also acquitted appellant of three additional charges including three specifications of accessory after the fact, one specification of child endangerment, and one specification of conspiracy, in violation of Articles 78, 81, and 134, UCMJ, 10 U.S.C. §§ 878, 881, 934.

As PV2█ turned back around towards appellant, SGT Craig walked in through the front door, carrying a jacket. Upon seeing PV2█ SGT Craig asked him if he knew who he was. PV2█ responded, that he did not. SGT Craig told PV2█ "you was with my wife." When PV2█ responded "I wasn't with that bitch," SGT Craig lifted up the jacket and shot PV2█ in the chest.[6] As PV2█ fell to the floor and gasped for breath, SGT Craig walked over to him and stated, "mhmm mhmm I got you I got you fuck n[***]" before shooting PV2█ again.

Hearing the shots, SPC █ who was in a bedroom in the back of the apartment, attempted to flee past SGT Craig, who turned around and fired off another shot, hitting SPC █ in the jaw. Despite being shot, SPC █ managed to continue running. But before SPC █ could make it out of the front door, SGT Craig grabbed him in a chokehold and flung him away from the door and onto the floor next to PV2█'s body. SGT Craig then shot SPC █ a second time. Appellant stated he watched SGT Craig walk into the kitchen and retrieve a knife, then SGT Craig looked at appellant and told him to leave and "don't tell nobody cause this could be [your] boy." Police would later discover the bodies with a knife protruding from PV2█'s neck.

After SGT Craig shot both men, appellant left the apartment and walked over to a church across the street, where service was still being conducted. Appellant stated he grabbed a door to the church but found it locked. When he returned to his truck, SGT Craig was sitting inside and asked where appellant had gone. SGT Craig then asked appellant multiple times if he was "good" and told him to be calm. He then began bragging about what he had done. SGT Craig told appellant not to leave and walked back towards the apartment. SGT Craig then called appellant's cell phone to say he was waiting for people at the church across the street to "clear out." Eventually, both appellant and SGT Craig returned to the library parking lot, where SGT Craig had left a red Infiniti car he had borrowed from another soldier, SPC █

SGT Craig handed appellant his Glock and instructed him to put it back in SGT Craig's case at appellant's home. Appellant drove away with SGT Craig following appellant's truck in the red Infiniti. Upon arriving home, appellant took his son and SGT Craig's Glock out of his truck and carried them inside. Appellant then got into the red Infiniti with SGT Craig.

SGT Craig drove them to SPC █'s apartment to return the red Infiniti. Once there, and in the presence of appellant and SPC █'s roommate, Mr. █, SGT Craig

---

[6] The pistol used in the shootings was a .380 Jimenez Arms pistol, which SGT Craig was also carrying at the time, not the Glock handgun he showed to appellant earlier in appellant's truck.

4

told SPC ███ about killing PV2 ███ and SPC ███. While there, SGT Craig changed clothes and placed the clothes he was wearing into a bag. SPC ███ asked to keep SGT Craig's shoes, which had a nickel-sized bloodstain. SGT Craig agreed.

SGT Craig and appellant then drove to an isolated location where SGT Craig disposed of the murder weapon and the clothes he had been wearing. Appellant later confessed and showed law enforcement where the clothing and weapon were disposed of, ultimately leading to the seizure of the murder weapon.

## C. Rehearing

A year before appellant's rehearing commenced, the government provided draft instructions with proposed elements for the offense of premeditated murder under an aider and abettor theory and for the lesser included offense of involuntary manslaughter.[7]

Two days before trial, the government amended its proposed elements for involuntary manslaughter as follows:

(1) That [victim] is dead;

(2) That [victim's] death resulted from the act of SGT Craig;

(3) That the killing of [victim] by SGT Craig was unlawful;

(4) That the accused assisted SGT Craig; and

---

[7] At the time of the offense, involuntary manslaughter was an enumerated lesser included offense of premeditated murder. *Manual for Courts-Martial, United States* (2016 ed.) [*MCM*], Appendix 12, Section A-3. The elements of involuntary manslaughter as prescribed by the President are as follows:

(a) That a certain named or described person is dead;
(b) That the death resulted from the act or omission of the accused;
(c) That the killing was unlawful; and
(d) That this act or omission of the accused constituted culpable negligence, or occurred while the accused was perpetrating or attempting to perpetrate an offense directly affecting the person other than burglary, forcible sodomy, rape, robbery, or aggravated arson.

*MCM*, pt. IV, ¶44.

(5) That the accused's assistance constituted culpable negligence.

After the close of evidence, defense filed a brief with its own proposed elements for the military judge's consideration. In particular, the defense requested the following elements for involuntary manslaughter, with the dissimilarity that SGT Craig's actions, rather than appellant's actions, were culpably negligent:

(1) That [victim] is dead;

(2) That his death resulted from the act of SGT Shaquille Craig in shooting him with a handgun on or about 5 March 2017 at or near Hinesville, GA;

(3) That this act amounted to culpable negligence;

(4) That the killing of [victim] by SGT Shaquille Craig was unlawful; and

(5) That [appellant] aided and abetted SGT Shaquille Craig to commit the offense of involuntary manslaughter by _____.[8]

After receiving both briefs, the military judge then discussed with the parties the appropriate elements for the charged and lesser included offenses under an aider and abettor theory of liability under Article 77, UCMJ. The defense acknowledged that appellant may be found guilty of a lesser included offense to premeditated murder if appellant's mental state was less criminal than that of SGT Craig.

MJ: So, could the government prove premeditated murder on Craig's behalf, but the accused be only guilty of the lesser-included offense of – well, three of them . . . [Article] 118(2), unpremeditated murder, [Article] 118(3), depraved heart murder or [Article] 119(2), involuntary manslaughter.

ADC: Your Honor, as an aider and abettor, I think you could. . . .I think it's pretty clear on that point.

---

[8] The defense also asked the military judge to consider ignorance or mistake when specific intent or actual knowledge is at issue, for both premeditated murder and the lesser included offense of involuntary manslaughter.

....

MJ:   The government in this trial could prove beyond a reasonable doubt that Craig [did] with premeditation, murder [PV2 ███] and [SPC ███], but that if the accused didn't share that – that intent, the accused could be found of a lesser-included offense, specifically – those three I just laid out.

ADC:  Yes, Your Honor. And to be very clear, as an aider and abettor.

MJ:   As an aider and abettor.

ADC:  Yes, Your Honor.

Upon reviewing the government's proposed closing argument presentation, the defense objected for lack of notice of the government's intent to pursue a perpetrator liability theory for involuntary manslaughter under Article 119(2). In response, the government confirmed they would argue, as outlined in the government's bench brief, that appellant's assistance to SGT Craig constituted culpable negligence. After further discussion with defense, the military judge said, "I don't see daylight between your two arguments," but allowed the defense to re-raise the issue during closing.

After deliberations, the military judge acquitted appellant of premeditated murder but found appellant guilty of involuntary manslaughter. The military judge then provided special findings which included the following:

Anyone who knowingly and willfully aids or abets another in committing an offense is also a principal and is equally guilty of the offense. *An aider and abettor must knowingly and willfully participate in the commission of the crime as something he wishes to bring about and seek by his action to make succeed.* He must also aid, encourage, incite the person to commit the criminal act. Presence at the scene of the crime is not enough, nor is failure to prevent the commission of an offense. There must be an intent to aid or encourage the person who commits the crime. Although *the accused must consciously share in Sergeant Craig's criminal intent to be an aider or abettor*, there is no requirement that the accused agree with, or even have knowledge of the means

7

by which Sergeant Craig was to carry out that criminal intent.

The military judge determined the evidence established beyond a reasonable doubt that appellant "aided and abetted Sergeant Craig to commit the unlawful killings" and that he did so by "knowingly and willfully" doing the following five things, at Sergeant Craig's request:

> (1) He drove Sergeant Craig to [SPC █████'s] apartment;
>
> (2) He checked whether the door of apartment was locked;
>
> (3) He knocked on the apartment door and/or rang the doorbell;
>
> (4) He gained access to the apartment by lying to [PV2 █████; specifically that he was present at the party the night before and that he left a laptop there, which assertions were totally false;
>
> (5) He stayed inside the apartment until Sergeant Craig arrived.

In his special findings, the military judge stated under the law of principals, "a person may be an aider and abettor to a lesser degree than the active perpetrator if he did not share the required criminal intent or purpose of the active perpetrator," citing *United States v. Foushee*, 13 M.J. 833, 835 (A.C.M.R. 1982) and *United States v. Jackson*, 6 U.S.C.M.A. 193 (1955). Applying that legal principle, the military judge found the government failed to prove:

> that Specialist Thompson shared Sergeant Craig's premeditated design to kill, intent to kill, or intent to inflect great bodily harm upon [the victims]. However, the government did prove by legal and competent evidence, beyond a reasonable doubt, that Specialist Thompson's knowing and willful assistance to Sergeant Craig amounted to culpable negligence, which was a proximate cause of the deaths of both [victims]. Specifically, the government also proved beyond a doubt the following ten things:
>
> (1)   That Specialist Thompson knowingly and willfully assisted Sergeant Craig;

8

(2)     That Specialist Thompson then knew that Sergeant Craig intended to confront and probably kill [PV2 ███] and the friend who was helping him;

(3)     That Specialist Thompson then knew Sergeant Craig had the motive to confront and probably kill them;

(4)     That Specialist Thompson then knew Sergeant Craig had a weapon with which he could confront and probably kill them;

(5)     That under these circumstances, their deaths were the foreseeable result of Specialist Thompson's assistance to Sergeant Craig;

(6)     That Specialist Thompson's knowing and willful actions facilitated Sergeant Craig's opportunity to kill these two Soldiers;

(7)     That Specialist Thompson's actions amounted to culpable negligence. . .

(8)     That Specialist Thompson's culpably negligent acts were a proximate cause of the deaths of both [PV2 ███ and SPC ███] . . .

(9)     That Specialist Thompson did not mistakenly believe that Sergeant Craig "just wanted to talk with them" or that he desired entry into the home for an innocent purpose. And if he did, the Government proved beyond a reasonable doubt that any such mistake of fact was unreasonable under the circumstances; and

(10)    The Government also disproved beyond a reasonable doubt that Specialist Thompson provided knowing and willful assistance to Sergeant Craig under duress. . . .

Appellant now argues his convictions warrant reversal because the military judge's special findings convicted him as a perpetrator of involuntary manslaughter, a theory not presented at trial, rather than under a theory of aiding and abetting involuntary manslaughter. Moreover, appellant argues that the military judge's special finding that appellant knew Sergeant Craig would *probably* kill is

insufficient to satisfy the knowledge required for an aider and abettor theory of liability. Appellant also argues that because aiding and abetting requires specific intent, appellant's mistake of fact needed only to be honest, rather than both honest and reasonable. As discussed below, we disagree.

## LAW AND DISCUSSION

### A. The Military Judge's Special Findings

#### 1. Standard of Review

We analogize special findings in a bench trial to instructions in a trial before members. *United States v. Falin*, 43 C.M.R. 702, 704 (A.C.M.R. 1972). This court "adopt[ed] the standards applied to appellate review of special findings under Fed.R.Crim.P. 23(c), for appellate review of special findings under R.C.M. 918(b)." *United States v. Truss*, 70 M.J. 545, 547 (Army Ct. Crim. App. 2011) (citation omitted). That is, "[s]pecial findings for an ultimate issue of guilt or innocence are subject to the same appellate review as a general finding of guilt, while other special findings are reviewed for clear error." *Id.*

We review legal and factual sufficiency under Article 66, UCMJ.[9] "The test for legal sufficiency is whether, considering the evidence in the light most favorable to the government, any rational trier of fact could have found the appellant guilty beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987). "The test for factual sufficiency is whether, after weighing the evidence in the record of trial and allowing for the fact that we did not personally see and hear the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325.

#### 2. Article 77, UCMJ – Theories of Criminal Liability

"Article 77 does not define an offense" but simply clarifies "that a person need not personally perform the acts necessary to constitute an offense to be guilty of it," a legal principle found at common law. *Manual for Courts-Martial, United States* (2016 ed) [*MCM*], pt. IV, ¶1(b)(1). The statutory language of Article 77 provides:

---

[9] Article 66, UCMJ, has been amended to modify the statutory standard for factual sufficiency review. Fiscal Year 2021 National Defense Authorization Act (NDAA), P.L. 116-283, 1 January 2021. Because appellant's offenses occurred prior to 1 January 2019, we review under the previous version of Article 66, UCMJ. *See Manual for Courts-Martial, United States* (2016 ed) [*MCM*].

Any person punishable under this chapter who –

(1) Commits an offense punishable by this chapter, or aids, abets, counsels, commands, or procures its commission; or

(2) Causes an act to be done which if directly performed by him would be punishable by this chapter;

is a principal.

10 U.S.C. § 877.

The statute eliminated common law distinctions between a principal in the first degree (the perpetrator or actual offender who committed the crime); a principal in the second degree (someone who aids or abets, counsels, commands, or encourages the commission of the crime, while present, or constructively present); and an accessory after the fact (someone who was not present but provides assistance after, knowing a crime has been committed). *Manual for Courts-Martial, United States* (2016 ed) [*MCM*], pt. IV, ¶1(b)(1); *see also* 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 13.1 at 442 (2018). While the common law distinctions have been erased in the statute, the *MCM*'s explanation to Article 77 uses "perpetrator" and "other party" to help clarify the necessary mens rea to be guilty as a principal, which is often an area of confusion. *MCM*, pt. IV, ¶1(b)(2),(4)-(6); *see e.g., Thompson*, 81 M.J. 824; LaFave, *supra*, at 466 ("Considerable confusion exists as to what the accomplice's mental state must be in order to hold him accountable for an offense committed by another.").

In our previous decision in this case, this court discussed in great detail principal liability as an aider and abettor under Article 77, UCMJ. *Thompson*, 81 M.J. at 831-833. And as this court discussed, "criminal liability as a principal under an aider and abettor theory is one of shared intent." *Id.* (citing *Nye & Nissen v. United States*, 336 U.S. 613, 620 (1949)). That is, to be guilty of an offense committed by a perpetrator, the other party must have an actus reus (e.g., doing something to aid the crime) *and* share in the criminal purpose or design. *Rosemond v. United States*, 572 U.S. 65, 66 (2014) (determining a person must not merely associate himself with the crime but "participate in it as something that he wishes to bring about" under the parallel federal statute) (internal quotations and citation omitted); *United States v. Jackson*, 6 USCMA 193, 19 CMR 319 (CMA 1955) (to be an aider and abettor "requires concert of purpose . . .a conscious sharing of [the perpetrator's] criminal intent."); *United States v. Pritchett*, 31 M.J. 213, 217 (C.M.A. 1990) (the aider must have "sufficient knowledge and participation to indicate that he knowingly and willfully participated in the offense in a manner that indicated he intended to make it succeed")(citation omitted). Thus, it is not

sufficient that an appellant intentionally took certain actions which may have later aided the perpetrator, if the appellant did not intend his acts to have the effect of aiding the crime. LaFave, *supra*, at 469.

As the military judge referenced in his special findings, our superior court in *Jackson* further determined that a lack of shared intent does not absolve the other party of criminal liability: "the aider and abettor may be guilty in a different degree from the principal, each to be held to account according to the turpitude of his own motive." 6 USCMA at 203 (citation and internal quotation omitted)(finding error where appellant was convicted of aiding and abetting murder, not to instruct on the lesser included offense of involuntary manslaughter); *see also United States v. Foushee*, 13 M.J. 833, 836 (ACMR 1982) ("a person may be an aider and abettor to a lesser degree than the principal if he did not share the required criminal intent or purpose of the active perpetrator"). Thus, "it is possible for a party to have a state of mind more or less culpable than the perpetrator of the offense. In such a case, the party may be guilty of a more or less serious offense than that committed by the perpetrator." *MCM*, pt. IV, ¶1(b)(4).

Courts have applied this legal principle in affirming a lesser included offense to the one with which appellant is charged with aiding and abetting. *See e.g., United States v. Richards*, 56 M.J. 282, 286 (C.A.A.F. 2002) (affirming appellant's conviction for voluntary manslaughter, under an aider and abettor theory, as a lesser included offense to unpremeditated murder); *United States v. Hofbauer*, 2 M.J. 922 (A.C.M.R. 1976) (affirming only aiding and abetting assault and battery where evidence failed to show appellant shared intent to commit aggravated assault).

### 3. Discussion

Here, appellant does not contest his level of mens rea nor that involuntary manslaughter is a lesser included offense of premeditated murder. Rather, appellant argues he was convicted under a theory not presented at trial. That is, the military judge's special findings–in stating appellant's culpably negligent acts were the proximate cause of the death of the victims–reflect appellant was convicted as a perpetrator, i.e., the one who committed the offense of involuntary manslaughter rather than as an "other party" being criminally liable for aiding and abetting SGT Craig's crime. Consequently, appellant argues his convictions should be set aside. We disagree.

The CAAF has held, "[a]n appellate court cannot affirm a criminal conviction on the basis of a theory of liability not presented at trial." *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008) (citing *Chiarella v. United States*, 445 U.S. 222, 236-37 (1980)). Here, however, the theory of appellant's criminal liability was the same for the charged offense (premeditated murder) as it was for the lesser included offenses (voluntary and involuntary manslaughter): (1) that appellant drove

Sergeant Craig to the victim's apartment, (2) checked whether the door was locked, (3) knocked on the apartment door and rang the doorbell, (4) gained access to the apartment by falsely stating he had left a laptop there at the party the night before, and (5) remained until Sergeant Craig walked into the apartment and began shooting the victims. The only difference between the offenses was appellant's state of mind in committing these acts.

The government notified defense through its various bench briefs that, in the alternative to premeditated murder, the government intended to argue appellant's actions, and not Sergeant Craig's, constituted culpable negligence under involuntary manslaughter. The defense did not object to the consideration of the lesser included offense; to the contrary, the defense specifically requested the military judge consider the lesser included offense of involuntary manslaughter during his deliberations. The defense just disagreed on whose actions must be culpably negligent, arguing to find appellant guilty of involuntary manslaughter, SGT Craig's act of shooting the victims must have been culpably negligent. Yet, from the charge sheet to the evidence presented at trial, the government's theory was never that SGT Craig's shooting of the two victims was anything but an act committed with the specific intent to kill.

We find the military judge's special findings are clearly supported by the record. We also find that appellant was convicted of involuntary manslaughter as a perpetrator rather than as an aider and abettor to that offense. That is, while appellant provided assistance to SGT Craig, appellant's assistance, in and of itself, constituted a crime under the UCMJ without the need for vicarious liability as an aider and abettor. While the special findings refer to appellant's knowing and willful assistance to SGT Craig, that knowledge and willfulness refers to appellant's actions. In other words, appellant actions were neither inadvertent nor involuntary. But it does not extend to the requisite mens rea for the offense. By finding appellant's actions were culpably negligent and that those culpably negligent acts were a proximate cause of the victims' deaths, the factfinder, in essence, found that appellant was the one who actually committed the offense of involuntary manslaughter. We disagree with appellant that this was error warranting reversal.

We recognize that the law of aider and abettor, as reiterated by the military judge in the special findings, may not be a perfect fit for involuntary manslaughter by culpable negligence under Article 119, UCMJ. Specifically, the statement of law that an "aider and abettor must knowingly and willfully participate in the commission of the crime *as something he wishes to bring about and seek by his action to make succeed.*" (emphasis added). This statement recites Judge Learned Hand's "oft-quoted" "canonical formulation" from *United States v. Peoni*, 100 F.2d 401 (2d Cir. 1938) which was later appropriated by the Supreme Court in analyzing aider and abettor liability in *Nye & Nissen v. United States,* 336 U.S. 613, 619 (1949) and echoed in later military court decisions. *Rosemond,* 572 U.S. at 76-77;

*see e.g., United States v. Pritchett*, 31 M.J. 213, 217 (C.M.A. 1990).[10] In *Rosemond*, the Supreme Court stated this intent requirement is met "when a person actively participates in a criminal venture with full knowledge of the circumstances" of the crime. *Id.* at 77.

Yet, the mens rea required for involuntary manslaughter is only culpable negligence–defined as "a culpable disregard for the foreseeable consequences to others"–a mens rea less than knowledge and specific intent. *MCM*, pt. IV, ¶44.c.(2)(a) (2016 ed.). So, it seems questionable "that a servicemember can be convicted of aiding and abetting a crime that is predicated on negligence." *United States v. Brown*, 22 M.J. 448, 451 (C.M.A. 1986) (Everett, C.J., concurring).[11] If aiding and abetting requires a shared purpose, then how is a person whose mens rea is less than knowledge capable of sharing in another person's purpose or intent?

In *Brown*, the appellant was charged with murder after he allowed another Soldier, who was drunk, to operate his car on the German public highways, resulting in the death of a 15-year-old boy. *Id.* at 449. The appellant, however, pleaded guilty and was convicted of the lesser offense of involuntary manslaughter. *Id.* On appeal, he argued his plea was improvident because he could not be held liable as an

---

[10] In *Pritchett*, our superior court outlined the elements of aiding and abetting as follows:

    (1) The *specific intent* to facilitate the commission of a crime by another;
    (2) Guilty *knowledge* on the part of the accused;
    (3) That an offense was being committed by someone; and
    (4) That the accused assisted or participated in the commission of the offense.

31 M.J. at 217 (internal citations omitted) (emphasis added).

[11] As discussed further below, in *Brown,* both the perpetrator and the appellant were culpably negligent. *Brown*, 22 M.J. 448, 451 (C.M.A. 1986). In his concurring opinion, Chief Judge Everett stated, "it is hard to convict someone on a premise that he shared a purpose with another person who had no purpose but was only culpably negligent." *Brown*, 22 M.J. at 451. In contrast, in appellant's case, the actions of SGT Craig (the perpetrator) were not culpably negligent but intentional. But the issue remains the same as in *Brown* because of appellant's mens rea of culpable negligence. It is hard to convict someone on a premise he shared a purpose with the perpetrator if he did not have full knowledge of the perpetrator's intent but was only culpably negligent.

aider and abettor to the other Soldier's culpably negligent actions because there was no sharing of criminal purpose. *Id.* at 449. The court decided it "need not decide in this case whether liability can be based on aiding and abetting a negligent act" though noting several jurisdictions have sustained convictions of involuntary manslaughter as an aider and abettor. *Id.* at n.*. Rather, it sustained Brown's convictions on his own culpably negligent act in turning his car over to someone who was intoxicated, finding the providence inquiry was sufficient where appellant admitted he was culpably negligent and that his conduct was a proximate cause of the death. *Id.*

There is an important distinction between appellant's case and *Brown*. And that is, unlike in *Brown*, the government did not argue that SGT Craig was culpably negligent in killing PV2 ▮ and SPC ▮—to the contrary, and as discussed, the evidence presented at appellant's trial was that the killing was intentional. Thus, unlike in *Brown*, the issue before us is not whether appellant can aid and abet another person's culpably negligent acts. The question as presented by the special findings is whether appellant can be convicted as a perpetrator for his own culpably negligent acts as a lesser included offense of aiding and abetting a specific intent crime. Our sister service court of criminal appeals answered that question in the affirmative in *United States v. Rowden*, 1994 CCA LEXIS 100 (A.F. Ct. Crim. App. 1994). There, appellant unsuccessfully challenged his conviction of involuntary manslaughter where the original charge was for aiding and abetting murder by providing the perpetrator a loaded firearm. Sergeant Rowden argued that "the findings of guilt by culpable negligence . . . created a fatal variance which misled defense in their preparation." *Id.* at *3. The court disagreed, reasoning that whether the charge was murder or involuntary manslaughter, the wrongful act of providing the loaded firearm was the same. *Id.* at *6. As in this case, "the difference between the offenses is one of intent." *Id.*[12] We find *Rowden* persuasive.

We also note that the definition of principal under Article 77, UCMJ, encapsulates both a person who commits an offense and a person who aids and abets an offense. Thus, whether appellant was convicted as an aider and abettor or the perpetrator–both are treated as principals under the law.[13] Thus, it would appear

---

[12] In *Rowden*, the military judge "specifically instructed the members that the aiding and abetting theory did not apply to the lesser-included offense of involuntary manslaughter." 1994 CCA LEXIS 100. We find that would have been the appropriate instruction here.

[13] We also note that "Under the common law rules of pleading, it was not necessary for the defendant to be charged specifically as a principal in the first degree or

(continued . . .)

appellant's argument is a distinction without a difference. We conclude, that under these certain circumstances, appellant can be convicted to a lesser degree as a perpetrator although charged with aiding and abetting a greater offense.

For all these reasons, we are unpersuaded that the military judge's findings warrant reversal of appellant's convictions. Consequently, appellant's additional arguments on this issue also fail. They are premised upon a theory that if convicted as an aider and abettor, appellant must have had knowledge of SGT Craig's action or specific intent. But as discussed, the mens rea required for involuntary manslaughter is culpable negligence and the government was not required to prove a more culpable mens rea to meet the elements of that offense.

The military judge's special findings addressed all elements necessary for the convictions. Further, given the evidence presented at trial, the military judge properly found appellant's culpably negligent acts were a proximate cause of the deaths of the two victims. Thus, we conclude the evidence is legally and factually sufficient to support appellant's conviction of involuntary manslaughter.

## B. Inconsistent Theories

### 1. Additional Facts and Background

Appellant's second assignment of error is that his convictions warrant reversal because the government argued inconsistent theories at his and SGT Craig's respective courts-martial. Before appellant's trial, SGT Craig pleaded guilty to the murders of PV2 █ and SPC █. As part of the plea agreement, the government, the defense, and SGT Craig entered into a stipulation of fact agreeing that SGT Craig's comment "these n[***] got to go" meant "these men needed to stop sleeping with his wife." The stipulation further provided that appellant "was not certain what [SGT Craig] intended to do, in fact 50 percent of him believed that he was just going to talk to or confront [PV2 █] and 50 percent of him thought he might kill [PV2 █]."

At appellant's rehearing, the defense moved to compel the production of witnesses who would authenticate portions or the entirety of the stipulations of fact from SGT Craig's trial, as well as appellant's previous trial, which the defense intended to introduce at appellant's rehearing. The government opposed. After discussing defense's motion with the parties during an Article 39(a) session, the

---

(. . . continued)
principal in the second degree; a general allegation that the defendant was a principal would suffice." LaFave, *supra*, § 13.1(d)(2) at 449.

military judge made a preliminary ruling of inadmissibility for the stipulations of fact and denied the motion to compel witnesses. During closing arguments, the government argued that SGT Craig:

> Takes out a Glock, puts it on his lap, says "They've got to go." What other way – what other way is there to interpret this? What other ways is there to interpret that? But to realize, to understand Sergeant Craig wants to kill this guy. The accused doesn't say there's a different way. . . It's obvious he knew.

On appeal, appellant contends the government violated his due process rights by arguing a theory–that appellant *knew* SGT Craig intended to kill the victims when he said "these n[***] got to go"–which was inconsistent with the government's theory during SGT Craig's guilty plea–that SGT Craig only meant the men needed to stop sleeping with his wife and that appellant was *uncertain* what SGT Craig intended to do. Appellant also argues the military judge erred in ruling SGT Craig's stipulation of fact was inadmissible at appellant's trial. We disagree on both counts.

### 2. Law and Discussion

This court reviews a military judge's decision to admit evidence for an abuse of discretion. *United States v. St. Jean*, 83 M.J. 109, 112 (C.A.A.F. 2023) (citing *United States v. Frost*, 79 M.J. 104, 109 (C.A.A.F. 2019)). To be admissible, evidence must be logically and legally relevant and not otherwise be excluded for prejudice, confusion, waste of time, or other reasons. Military Rules of Evidence [Mil. R. Evid.] 401, 402, 403. Here, the military judge's discussion with counsel during the Article 39(a) illustrated the questionable relevancy of a stipulation of fact entered into as part of a plea agreement in a co-accused's case during appellant's separate proceeding. The military judge also expressed concerns about the use of the stipulations not only by the defense but also the government. In ruling the stipulation of fact was inadmissible, we find no abuse of discretion.

This Court previously addressed inconsistent theories in *United States v. Turner*, 2018 CCA LEXIS 592 (Army Ct. Crim. App. 30 Nov. 2018), in which the court noted while the Supreme Court and other federal appeals and district courts have addressed the right and left limits of when the government's conflicting theories violate due process, it appeared to be "an issue of first impression for military courts." *Id.* at *15 (citing in part *Bradshaw v. Stumpf*, 545 U.S. 175 (2005); *Thompson v. Calderon*, 120 F.3d 1045 (9th Cir. 1997); *Smith v. Groose*, 205 F.3d 1045 (8th Cir. 2000)). In reviewing those opinions, the *Turner* court stated, "Most courts hold that a due process violation will only be found when the inconsistency exists at 'the core' of the prosecution's case." *Id.* (quoting *Sifrit v. Nero*, 2014 U.S. Dist. LEXIS 145759 at *80 (D. Md. 2014). "Discrepancies based on rational

inferences from ambiguous evidence will not support a due process violation provided the two theories are supported by consistent underlying facts." *Id.* (internal quotations omitted).

First, it is unclear whether a stipulation of fact entered into by both parties and the accused constitutes a government theory at trial. As an agreement between opposing parties, stipulations of fact often include concessions by both sides about what the facts of the case are, rather than representing one party's theory of the case. Second, even if it qualified as a government theory, the two interpretations of SGT Craig's statements are not entirely inconsistent. That is, a statement to the effect of "They've got to go" could reasonably be interpreted to mean that these men needed to stop sleeping with SGT Craig's wife but also mean SGT Craig intended to stop the men from sleeping with his wife by killing them. That is reflected in SGT Craig's stipulation of fact that "50 percent of [appellant] believed that [SGT Craig] was just going to talk to or confront [PV2 ███] and 50 percent of him thought he might kill [PV2 ███]."

Even if there is an inconsistency, appellant's argument hinges on a difference in interpretation of an underlying fact that remained the same from SGT Craig's guilty plea to appellant's contested court-martial–that is, SGT Craig told appellant, "these n[***] got to go." The government's theory that SGT Craig told appellant this remained the same in both trials, as did the core of the government's case. The defense does not argue that there were inconsistent theories about who killed the victims, or what SGT Craig said to appellant, or that appellant assisted SGT Craig. Thus, the only inconsistency, if one exists, is an additional reasonable inference drawn from SGT Craig's statement.

Finally, even were this court to be convinced the government violated appellant's due process rights, any violation was harmless beyond a reasonable doubt. The military judge's special findings made unequivocally clear that he rejected the government's argument that appellant could only interpret SGT Craig's words to mean he intended to kill the victims. Therefore, any inconsistent theories in this case had no bearing on the ultimate convictions.

## CONCLUSION

The findings and sentence are AFFIRMED.[14]

---

[14] The Judgement of the Court, dated 13 December 2023, is amended to reflect "20190525" as the "ACCA Case Number."

Judge EWING and Judge JUETTEN concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court